IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD C., | ) |
|     Plaintiff, | ) No. 20 C 3426 |
| v. | ) Magistrate Judge M. David Weisman |
| ANDREW SAUL,<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Leonard C. appeals the Commissioner's decision denying his application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

### Background

On September 30, 2016, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 10-21, 118, 130, 219.) The Appeals Council declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations omitted and cleaned up).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity between January 1, 2015, the alleged disability onset date, and September 30, 2016, his date last insured ("DLI"). (R. 12.) At step two, the ALJ determined that, through his DLI, plaintiff had the severe impairments of "spine disorder and small fiber predominant painful peripheral neuropathy." (R. 13.) At step three, the ALJ found that, through his DLI, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 14-15.) At step four, the ALJ found that, through his DLI, plaintiff had the RFC

2

to perform sedentary work with certain exceptions, including his past relevant work as a financial institution manager, and thus was not disabled. (R. 15-21.)

Plaintiff first challenges the ALJ's determination that plaintiff's depression and anxiety are not severe impairments.[1] A severe mental impairment is one that "significantly limits [the claimant's] . . . ability to do basic work activities." 20 C.F.R. § 416.922. To determine whether a mental impairment is severe, the ALJ "rate[s] the [claimant's] degree of functional limitation" in four areas—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself—on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(3), (4). If the ALJ rates the "degrees of . . . limitation as 'none' or 'mild,' [he] will generally conclude that [the claimant's] impairment(s) is not severe." 20 C.F.R. § 404.1520a(d)(1).

The ALJ found that plaintiff was only mildly limited in each of the four areas. (R. 13-14.) Plaintiff argues that his mental impairments have "more than a minimal impact" on his functioning as demonstrated by his: (1) "socially isolative behavior;" (2) "low energy and fatigue;" (3) inability to finish what he starts; and (4) assertion that he "found handling stress to be overwhelming." (ECF 20 at 10.) Socially isolative behavior, low energy, and fatigue may be symptoms of depression, but plaintiff does not point to any evidence that shows whether, or the extent to which, these symptoms limit him in any of the function areas. Further, the ALJ noted

---

[1] An ALJ's failure to categorize one impairment as severe is harmless error if he categorizes other impairments as severe and considers both the severe and the non-severe impairments in determining the RFC. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (holding that ALJ's failure to deem claimant's chronic fatigue syndrome a severe impairment was harmless because the ALJ "recognized numerous other severe impairments, . . . proceed[ed] with the [disability] evaluation process[,]" and considered claimant's chronic fatigue syndrome along with her other severe and non-severe impairments in determining the RFC); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (stating that an ALJ "must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment" in determining the RFC, and "[the] failure to fully consider the impact of non-severe impairments requires reversal"). The ALJ here, however, did not consider plaintiff's depression and anxiety in formulating the RFC. (*See* R. 15-19.) Thus, any error in categorizing plaintiff's mental impairments as non-severe would not be harmless.

that plaintiff said he had "difficulty in completing tasks" and "handling stress." (R. 14 (citing R. 261, 264-65).) However, the ALJ also said that: (1) plaintiff "notes no difficulty in concentration or paying attention, and is able to drive, go out alone, and handle money;" (2) plaintiff's "mental status exams . . . noted appropriate mood and affect, normal memory and attention span, and goal-directed thought process;" (3) he has "fair to normal insight and judgment;" (4) there is no evidence of hallucinations or delusions; and (5) plaintiff has "no issues handling changes in routine." (R. 14 (citing medical records at R. 262, 369, 373, 379, 495, 497, 519, 523, 553-54, 571, 583, 604, 606, 775, 777).) In short, the ALJ's conclusion that plaintiff's mental impairments only mildly limit his functioning, and thus are not severe impairments, is supported by substantial evidence.

Plaintiff also argues that the ALJ erred in finding that plaintiff's condition does not meet listing 11.14 for peripheral neuropathy. To meet that listing, plaintiff must have "[d]isorganization of motor function in two extremities . . . resulting in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities" or "[m]arked limitation . . . in physical functioning" and in one of the four areas of mental functioning. https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm#11_14 (last visited June 14, 2021). With respect to this listing, the ALJ said:

> Although the claimant was noted to have neuropathy, same fails to rise to listing level severity. An EMG and thermoregulatory sweat test were not suggestive of neuropathy. Further, the claimant was noted to have a normal gait, did not use an assistive device, could tandem walk, heel walk, and toe walk, had normal muscle strength, and could perform bilateral rapid repetitive finger grips without difficulty. Additionally, as noted above, [he] does not have marked limitations in any of the four functional areas. As such, his neuropathy does not meet or equal Listing 11.14.

(R. at 15) (citations omitted). As discussed above, the ALJ's determination that plaintiff was not markedly limited in the four function areas is supported by substantial evidence. The same is true of his conclusion that plaintiff does not have an extreme limitation in his ability to stand up from a seated position, balance while standing or walking, or using his upper extremities. (*See* R. 15

4

(citing R. 333, 373, 379, 421, 423, 432-33, 509, 519, 523, 564 (medical records noting that plaintiff had normal gait, muscle strength, and range of motion, could walk on his heels and toes without difficulty, and could squat and stand up)).) Thus, the ALJ's finding that plaintiff does not meet listing 11.14 is not erroneous.

Plaintiff's next contention is that the ALJ erred by rejecting the opinion of plaintiff's treating physician, Dr. Shah. According to the regulations in effect when plaintiff filed his application, an ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

In a letter dated February 14, 2017, Dr. Shah said he had treated plaintiff since 2013, plaintiff's neuropathy, joint pain, and back pain rendered him "unable to lift, sit for long periods of time, walk, climb or stoop" or to "wear appropriate [work] attire," and plaintiff was unable to work. (R. 663.) The ALJ gave "[l]ittle weight" to this opinion because "it was rendered outside of the relevant period" and opined on the ultimate issue of disability, a determination reserved to the Commissioner. (R. 18.) As plaintiff points out, however, an ALJ must "consider *all* relevant evidence, including [post-DLI] evidence" in determining whether plaintiff was disabled as of the DLI. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010) (emphasis in original); *Wamser v. Colvin*, No. 12 C 6197, 2013 WL 5437352, at *7 (N.D. Ill. Sept. 30, 2013) ("[P]ost-DLI medical evidence

5

is relevant to a determination of whether Plaintiff was disabled."). Moreover, the fact that an ALJ is not bound by a doctor's opinion that a claimant is disabled, *see* 20 C.F.R. § 404.1527(d)(1), does not mean that "such a statement is improper and therefore to be ignored." *Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012). Accordingly, the ALJ's rejection of Dr. Shah's February 14, 2017 opinion was error.

The ALJ similarly erred in rejecting the opinions in Dr. Shah's May 14, and November 19, 2018 letters. (R. 18-19.) Together, they say that since January 1, 2015, plaintiff could only sit or stand for an hour a day, walk one to two blocks, lift no more than twenty pounds, rarely reach, handle, and finger objects, could not travel alone, had difficulty bending, squatting, kneeling, and turning, and could not complete an eight-hour workday. (R. 929-35.) The ALJ gave little weight to these opinions because: (1) they were rendered outside the relevant period and said plaintiff was disabled; (2) there was no support for the handling/fingering limitation as plaintiff was not tested for carpal tunnel syndrome during the relevant period; and (3) they were contradicted by plaintiff's testimony that "he is able to drive, use Facebook . . . , and perform general household tasks including cooking and laundry." (R. 18-19.)

The first reason, as discussed above, is not a sufficient basis for rejecting Shah's opinions. The second reason might be a basis for dismissing Shah's opinion as to plaintiff's handling/fingering ability, but it has no bearing on the rest of his opinions. Finally, the fact that plaintiff can drive, use Facebook, and do some household chores (which he said were limited to making "sandwiches, frozen & foods" "2-3 times/week" and cleaning with "difficult[y]," R. 261), does not impugn Dr. Shah's opinions that plaintiff cannot sit or stand for more than an hour, walk more than two blocks, lift more than twenty pounds, bend, squat, kneel, or complete an eight-hour workday. (R. 929-34); *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (stating that a

6

claimant's performance of "minimal daily activities . . . do[es] not establish that [he] is capable of engaging in substantial physical activity").

In sum, the ALJ's bases for rejecting Dr. Shah's opinions are not supported by substantial evidence. Because the ALJ's treatment of the doctor's opinions was pivotal to his decision to deny benefits, the case must be remanded for a reassessment of the medical opinion evidence.

## Conclusion

For the reasons set forth above, the Court reverses the Commissioner's decision, grants plaintiff's motion for summary judgment [19], denies the Commissioner's motion for summary judgment [27], and pursuant to the fourth sentence of 42 U.S.C. § 405(g) remands this case to the Commissioner for further proceedings.

**SO ORDERED.**                               **ENTERED: April 28, 2022**

**M. David Weisman**
**United States Magistrate Judge**